UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 22-61294-CIV-ALTMAN/HUNT

LARRY D. STRUTTON and
CAROLYN A. STRUTTON,

        Plaintiffs,
v.
LESLIE SCOTT ANDERSON

        Defendant.
_____/

## REPORT AND RECOMMENDATIONS

THIS CAUSE is before this Court on Defendant's Notices of Claim of Exemption. ECF Nos. 94-99.  The Honorable Roy K. Altman, United States District Judge, referred these Notices to the undersigned for disposition. ECF No. 104, *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1.  Having carefully reviewed the filings, any response thereto, the arguments of counsel made at an October 13, 2023, hearing, the entire record, and applicable law, and being otherwise fully advised in the premises, the undersigned hereby recommends that all proceedings to enforce or issue writs of garnishment be stayed for the reasons outlined below.

### BACKGROUND

This case arises out of a consent judgment entered by the United States Bankruptcy Court for the District of Colorado against Defendant in favor of Plaintiffs on January 18, 2018.  The Parties entered into a forbearance agreement in which Plaintiffs agreed to forgo collecting on the consent judgment's entire amount at once if Defendant complied with the terms of the agreement.  Plaintiffs now contend Defendant breached, thereby entitling Plaintiffs to collect the consent judgment's full amount immediately.

Plaintiffs registered the consent judgment before this Court and commenced collections proceedings.

Defendant has long argued that he is not, and has never been, in default. Now before the Court are Defendant's Claims of Exemptions to various Writs of Garnishment issued in these proceedings. Although several claims were docketed, the Parties notified this Court that only the Writs against Defendant's employer, Maronda Homes, LLC, and against moneys held by the Vanguard Group, remain contested. This Court examines each below.

## DISCUSSION

I. <u>Maronda Homes, LLC.</u>

Defendant requests that this Court dissolve the Writ of Garnishment upon his employer, Maronda Homes, LLC. Defendant argues he is entitled to the head of household exemption, Fla. Stat. §222.11(1)(c), which provides that "any natural person who is providing more than one-half of the support for a child or other dependent" is exempt from garnishment. Defendant argues he has been the sole breadwinner for his household, which currently consists of Defendant and his wife, Kimberly Gardiner, and that he also supplements his former wife's income by more than half.

In both his filings and at the evidentiary hearing, Defendant has testified under oath that he has been married to Kelly Gardiner since 2019. Additionally, Ms. Gardiner, both in writing and on the witness stand, confirmed she and Defendant are married and that he contributed 100 percent of household income through August 2023. Additionally, Defendant testified he supplements his former wife's income by more than half of her income as a schoolteacher in Colorado. Given this, Defendant argues, Plaintiffs cannot

2

overcome his argument that he is head of household pursuant to the definition provided by Fla. Stat. §222.11(1)(c).

Plaintiffs argue that despite Defendant's affidavits and testimony, he has not met the burden of proof. The undersigned disagrees. It was uncontested that at the time the Writ was served, Defendant was the sole provider for both himself and Ms. Gardiner. Both he and Ms. Gardiner confirmed this fact under oath, and Plaintiffs have given this Court no reason to doubt this testimony. Plaintiffs have not argued Defendant has waived his right to claim the head of household exemption, and thus the Writ of Garnishment against his employer, Maronda Holmes, LLC, should be dissolved as of the time it was served.[1]

## II. Vanguard Group, Inc.

Defendant additionally seeks to have this Court dissolve any writ of garnishment against a Joint Brokerage Account that Defendant has established at Vanguard Group ("Vanguard"), arguing the account is held as tenancy by the entireties and, therefore, exempt from garnishment.

Plaintiffs respond the presumption that the joint account is held as a tenancy by the entireties is rebuttable and argue they have adequately rebutted said presumption by putting forth substantial proof of fraud. Plaintiffs argue that funds Defendant transferred from his individual brokerage account with Vanguard to the alleged joint brokerage account are not entitled to the presumption. According to Plaintiffs, the transfer—which

---

[1] Since the issuance of the Writ against Maronda Homes, Defendant's wife has become employed. The record before the Court was not developed enough to establish whether such employment would affect Defendant's status should there be a subsequent Writ.

occurred after this case was filed—was a direct attempt to hinder or delay Defendant's creditors. If true, then the transfer was fraudulent within the meaning of the Florida Uniform Fraudulent Transfer Act, Chapter 726 of the Florida Statutes, and Defendant's money could be garnished. *See* Fla. Stat. §§ 726.102(4)-(5), 726.105(1)(a), and 726.106(1).

Defendant, on the other hand, has consistently maintained that he was never in default, and thus the transfer could not have been a fraudulent attempt to withhold funds.[2] As evidence of this, Defendant cites both his and Ms. Gardiner's strident objections to any implication of ill intent in the transfer. Additionally, Defendant points to an ongoing case in Colorado, opened after the commencement of the present action, where he seeks that court's determination as to whether the default at issue in this case was indeed a default at all.

It is true Defendant is entitled to a presumption that the account is held as a tenancy in the entireties, and thus not subject to garnishment. Indeed, "all spousal bank accounts are considered as held by tenan[ts] by the entireties unless otherwise specified in writing" and "[n]o one need establish all the common law unities" in those instances where a third-party creditor seeks to garnish such an account. *Storey Mountain, LLC v. George*, 357 So. 3d 709, 713 (Fla. Dist. Ct. App. 2023) (quoting *Versace v. Uruven, LLC*, 348 So. 3d 610, 614 (Fla. Dist. Ct. App. 2022)). To counter Defendant's argument, Plaintiffs point to Florida's Uniform Fraudulent Transfer Act ("UFTA"), which states "a transfer is fraudulent as to a creditor if the debtor made the transfer '[w]ith actual intent to

---

[2] Defendant makes a similar argument against the need for proceedings supplementary, arguing that, as there was no default, there was no ill intent, and thus there is no need for proceedings that seek to find evidence of such intent. ECF No. 162.

hinder, delay, or defraud any creditor of the debtor.'" *Mane FL Corp. v. Beckman*, 355 So. 3d 418, 425 (Fla. Dist. Ct. App. 2023) (quoting Fla. Stat. § 726.105(1)(a)).  Plaintiffs argue the transfer itself was invalid, and thus the money is subject to garnishment.

The argument thus appears to boil down to intent.  Defendant argues there was no ill intent in the transfer, while Plaintiffs argue the ill intent is blatantly obvious.  Fortunately, the UFTA has provided a mechanism to resolve such disputes.  Recognizing that "establishing actual intent through direct proof is difficult, the UFTA looks to circumstantial indicia of intent commonly known as 'badges of fraud.'" *Id.* (quoting *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 152 (Fla. Dist. Ct. App. 1994)).  Factors to consider include whether:

> (a) The transfer or obligation was to an insider.
> (b) The debtor retained possession or control of the property transferred after the transfer.
> (c) The transfer or obligation was disclosed or concealed.
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (e) The transfer was of substantially all the debtor's assets.
> (f) The debtor absconded.
> (g) The debtor removed or concealed assets.
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* (quoting Fla. Stat. § 726.105(2)(a)-(k)).  Such "badges" are non-exclusive, and courts may consider other factors when determining a debtor's intent. *Id.* at 426.  As few as two to three badges may be enough to infer fraud. *Id.*

Looking at the "badges," several would justify a finding of potential fraud. The transfer in question was to an insider, namely Defendant's current wife, and Defendant retains substantial control over the property transferred. Defendant had also certainly been threatened with suit prior to the transfer. These facts could well justify a finding that Defendant engaged in the funds transfer to protect them from Plaintiffs' claims. However, Defendant urges this Court to look to the Colorado case to show that Defendant intended no fraud as there was never any default to hide from in the first place.

The existence of a parallel proceeding to this case brings up an interesting question, namely, whether it is prudent to continue making determinations in this case when all of these decisions could very well be moot should the Colorado court determine Defendant was indeed never in default on his obligations.

III.     The Effect of the Colorado Case.

A case out of the Middle District of Florida offers some insight as to what a court might do in a situation where a parallel case could be determinative of an instant matter. In *Stansell v. Revolutionary Armed Forces of Columbia (FARC)*, No. 8:09-CV-2308-T-26MAP, 2011 WL 13359372 (M.D. Fla. Sept. 8, 2011), the District Court *sua sponte* issued a limited stay of post-judgment proceedings until a key issue could be determined by the Eleventh Circuit. The *Stansell* court reasoned that such a stay was "appropriate in order to conserve and prevent the needless expenditure of client and judicial resources in the event the decision . . . adversely impacts the validity" of the court's decision. The court determined "it ma[de] little sense to continue to authorize the issuance and service of writs of garnishment" if the authority underlying those writs were found to be erroneous. *Id.*

The undersigned finds a similar situation exists here. This entire action rises and falls on whether Defendant is, indeed, in default. Since the beginning of this case Defendant has steadfastly maintained his position that he is not in default,[3] and as this case has developed it has been shown that his position is not frivolous. The ultimate decision as to Defendant's argument is currently and properly before another court. Nonetheless, the Parties in this case continue to engage in significant litigation, necessitating considerable expenditures of judicial resources. The docket reflects well over one hundred filings and multiple hearings to determine the numerous issues that have arisen so far. Indeed, currently pending before this Court are Plaintiffs' Motion to Commence Proceedings Supplementary to Execution, Implead Third Party into Proceedings, and Issue a Statutory Notice to Appear. ECF No. 151. Plainly, there is the potential to engage in significant resource expenditure without clear guidance as to whether those resources should be spent at all. Here, as in *Stansell*, it makes little sense to continue to expend such resources by ruling on issues that may ultimately be undone by the Colorado court's decision.

Ultimately, the *Stansell* court denied all motions for issuance of writs of garnishment without prejudice to being renewed; stayed all proceedings to enforce the previously issued writs of garnishment; directed the Plaintiffs to serve a copy of the order staying the proceeding on all the entities to which writs of garnishment have previously been served; and directed Plaintiffs not to serve any unserved writs of garnishment. *Stansell*, No. 8:09-CV-2308-T-26MAP, 2011 WL 13359372, at *1–2. The undersigned

---

[3] The undersigned notes Defendant attempted to advance such an argument in this case, ECF No. 40, and, after this Court opined that he should instead file an action for declaratory judgment, ECF No. 54, 61, did just so in Colorado.

would recommend the same be done here and that the case be stayed pending the outcome of the Colorado matter.

## RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that:

1. All Motions for Issuance of Writs of Garnishment be denied without prejudice to being renewed;
2. All proceedings to enforce the previously issued writs of garnishment be stayed;
3. Plaintiffs be directed to serve a copy of the order staying the proceedings on all the entities to which writs of garnishment have previously been served; and
4. Plaintiffs be directed not to serve any unserved writs of garnishment.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2018); see Thomas v. Arn, 474 U.S. 140 (1985).

DONE AND SUBMITTED at Fort Lauderdale, Florida this 17th day of November 2023.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Honorable Roy K. Altman

All Counsel of Record